**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen and Kelly Murdock, husband and wife,<br><br>        Plaintiffs,<br><br>vs.<br><br>Mingus Union High School District; Mingus Union Governing Board; Does I-X; Black Corps., Associations and Partnerships,<br><br>        Defendants. | No. CV-04-2313-PHX-DGC<br><br>**ORDER** |

        Pending before the Court are Defendants' motion for summary judgment and motion to strike, and Plaintiffs' motion to remand and motion for partial summary judgment.  Docs. ##43, 63, 50, 45.  For the reasons stated below, Defendants' motion for summary judgment will be granted, and Defendants' motion to strike and Plaintiffs' motions will be denied.[1]

**I.    Background.**

        Plaintiff Stephen Murdock was employed by the Mingus Union High School District ("District") as a non-tenured Spanish teacher.  Mr. Murdock signed a one-year employment contract beginning on August 7, 2003, and ending on May 21, 2004.  Doc. #44, Ex. B.

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process.  *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

In October of 2003, the District was informed that Mr. Murdock had allegedly taken a college-level Spanish test for Brande Melton, the wife of another teacher at Mingus Union High School, Seth Melton. The District's superintendent, Sharyl Allen, investigated the allegations. After conducting interviews with Mr. Murdock, Mr. Melton, and others, she concluded that Mr. Murdock had inappropriately taken the test for Ms. Melton. Mr. Murdock disputes both the adequacy of the investigation and the finding that he took the test.

On October 23, 2003, the Mingus Union High School Governing Board met in a closed executive meeting. Mr. Murdock was not in attendance. Ms. Allen presented the results of her investigation to the Governing Board and recommended non-renewal of Mr. Murdock's contract for the following academic year. Mr. Murdock's personal statement refuting the allegations was not introduced at this meeting. Doc. #61.

On November 13, 2003, the Governing Board held a public meeting regarding Mr. Murdock's contract renewal. During this meeting, Mr. Murdock read a prepared statement. Doc. #44, Ex. W. The Governing Board voted, 3-to-2, against renewing Mr. Murdock's contract. Doc. #61.

On or before April 15, 2004, Mr. Murdock received official written notice that his contract would not be renewed. Mr. Murdock's employment continued through the duration of his contract. Doc. #44. On May 13, 2004, Mr. Murdock was informed that a copy of the non-renewal letter had been placed in his personnel file. *Id.*

Dissatisfied with the operation and outcome of these proceedings, Mr. Murdock and his wife, Kelly Murdock (collectively, "Plaintiffs"), filed suit against the District and the Governing Board (collectively, "Defendants"). Defendants removed the case pursuant to 28 U.S.C. § 1441(a) on the basis of this Court's original jurisdiction over a federal due process claim included in Plaintiffs' original complaint. Doc. #1. On April 19, 2005, Plaintiffs filed an amended complaint which asserts due process violations under both federal and state law related to infringements upon Mr. Murdock's property and liberty interests, violations of Arizona's Open-Meeting Law, and claims for breach of contract, tortious interference with contract, and punitive damages. Doc. #21.

## II.    Motion to Remand.

Plaintiffs have filed a motion to remand this case to state court. Doc. #50.  Plaintiffs assert that the Court can remand the entire case – including the federal due process claims – under 28 U.S.C. 1441(c) because state claims predominate. Doc. #50.  Section 1441(c) provides (emphasis added):

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all *matters* in which State law predominates.

The Court construes the word "matters" to mean "claims." *See Kabealo v. Davis*, 829 F. Supp. 923, 926 (S.D. Ohio 1993).  This reading would permit the Court to remand the state claims, but not the federal claims. *See Lujan v. Earthgrains Baking Companies, Inc.,* 42 F.Supp.2d 1219, 1221-22 (D.N.M. 1999) (indicating that the Tenth Circuit would most likely reject the argument that the amended removal statute allows for remand of federal claims); *Eastus v. Blue Bell Creameries,* 97 F.3d 100 (5th Cir. 1996) (holding that district courts have authority to remand only state claims which are not intertwined with federal question claims).

With respect to the remaining state claims, the proper exercise of the Court's discretion is guided by considerations of "judicial economy, convenience, fairness, and comity." *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1998). Plaintiffs cite to *Cohill* for the proposition that "'in the usual case' the balance of factors will weigh toward remanding any remaining pendent claims to state court." Doc. #50 at 8. This statement applies, however, to cases "in which all federal-law claims are eliminated before trial." *Cohill*, 484 U.S. at 350 n.7.  Here, Plaintiffs' federal due process claims were extant when the motion to remand was submitted to the Court, thus rendering Plaintiffs' selective use of *Cohill* inapposite.

The Court, under 28 U.S.C. 1331, has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," including federal due process claims.  In *Mincy v. Staff Leasing, L.P.,* 100 F.Supp.2d 1050 (D. Ariz. 2000), we explained that "[f]ederal courts are reluctant to remand state claims, once they obtain original

1  jurisdiction based on federal question, where all the claims derive from the same set of facts."

2  *Id.* at 1053.  Here, the same set of facts provide the context for all seven counts.  Doc. #21

3  ¶¶ 6-49.  To remand the state claims would be highly inefficient given the related nature of

4  the federal and state claims.  Because the Court concludes that it would be inefficient to

5  remand the state claims alone, and has no authority to remand the entire case, Plaintiffs'

6  motion to remand will be denied.[2]

7  **III.    Defendants' Motion for Summary Judgment.**

8          **A.    Legal Standard for Summary Judgment.**

9          Summary judgment is appropriate if the evidence, viewed in the light most favorable

10 to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and

11 that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

12 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Only disputes over facts that might

13 affect the outcome of the suit . . . will properly preclude the entry of summary judgment."

14 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The disputed evidence must be

15 "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

16 Summary judgment may be entered against a party who "fails to make a showing sufficient

17 to establish the existence of an element essential to that party's case, and on which that party

18 will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

19

20

21

22

23

24  _____

25          [2]In support of their position that a district court may remand both federal and state
   claims, Plaintiffs cite to *Maine v. Thiboutot*, 448 U.S. 1 (1980), which according to Plaintiffs
26  "recogniz[es] that federal courts do not have exclusive jurisdiction to adjudicate § 1983
   claims, since state courts have concurrent jurisdiction . . . ."  Doc. #59 at 4.  Concurrent
27  jurisdiction is irrelevant.  The question is not whether state courts can hear § 1983 claims, but
28  whether this Court can remand federal claims properly removed.

1

**B.     Procedural Due Process.**

2

**1.     Property Interest – Counts One and Three.**[3]

3      Plaintiffs claim that Mr. Murdock was deprived of a property interest in his continued

4   employment as a teacher without being afforded the procedural safeguards guaranteed by the

5   federal and state constitutions.  Doc. #21.[4]  Defendants argue that Mr. Murdock had no

6   protected property interest.  Doc. #43.

7      To state a claim for violation of procedural due process, Plaintiffs must first establish

8   that Mr. Murdock had a protected property interest in his continued employment. *See*

9   *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 331 (9th Cir. 1995).  If the

10  Court finds that such a property interest exists, the Court then considers whether Mr.

11  Murdock received all the process that was due. *Id.*  The Court looks to state law to determine

12  whether a protected property interest exists. *See Board of Regents v. Roth*, 408 U.S. 564

13  (1992).

14     To have a protected property interest, one "clearly must have more than an abstract

15  need or desire for it . . . .  He must, instead, have a legitimate claim of entitlement to it." *Id.*

16  at 577; *see Kerley Indus. v. Pima County,* 785 F.2d 1444, 1446 (9th Cir.1986).  Under

17  Arizona law, non-tenured teachers do not have a property right in continued employment and

18  A.R.S. § 15-503(D) does not create one. *Petroni v. Board of Regents,* 566 P.2d 1038, 1042

19  (Ariz. App. 1977).

20

21  _____

22     [3]Plaintiffs label Count One as a claim for "wrongful discharge," but their argument
proceeds under procedural due process grounds.  Doc. # 21.  For example, in describing the
23  count, Plaintiffs allege that Mr. Murdock was entitled to "a due process hearing," the "right
    to notice and hearing," and "a name-clearing hearing." *Id.*
24

25     [4]The Court's analysis of federal due process also applies to the due process claim
under the Arizona Constitution. *See State v. Casey*, 71 P.3d 351 (Ariz. 2003) ("The federal
26  and state due process clauses contain nearly identical language and protect the same interests
    . . . . We see no compelling reason to interpret the state due process clause differently in this
27  context from the federal clause.")

28

1    While the plain terms of Mr. Murdock's employment contract specified an end-date
2    to the employer-employee relationship (Doc. #44, Ex. B), Mr. Murdock asserts that he had
3    a reasonable expectation of future employment and, therefore, a protected property interest.
4    Doc. #61.  Although a cognizable property interest may result from reasonable reliance on
5    the representations or promises of others, *see Merritt v. Mackey*, 827 F.2d 1368 (9th Cir.
6    1987) ("an employee may establish the existence of a property interest in continued
7    employment by demonstrating a reasonable expectation based upon . . . express or implied
8    promises"), Mr. Murdock admits that no member of the Governing Board ever made any
9    statement to the effect that he was assured a continuing position.  Doc. #44, Ex. A(1) at 18-
10   19.  Mr. Murdock's subjective expectation that he would be given tenure due to his
11   performance or positive evaluations does not amount to a property interest in continued
12   employment, *see Petroni,* 566 P.2d at 1042, particularly in the absence of any inducements
13   from members of the Governing Board.

14    The Court finds that Mr. Murdock had no property interest in his continued
15   employment.  As a result, the Court need not review the adequacy of the investigation or the
16   accuracy of Defendants' determinations.  *See Codd v. Velger,* 429 U.S. 624, 628 (1977) ("the
17   adequacy or even the existence of reasons for failing to rehire him presents no federal
18   constitutional question.").  Summary judgment will be granted in Defendants' favor with
19   respect to Counts One and Three.

20                    **2.        Liberty Interest - Count Seven.**

21    Plaintiffs claim that the "public disclosure of . . . disputed information" (Doc. #21)
22   regarding Mr. Murdock's academic honesty deprived him of a liberty interest in "his good
23   name, reputation, honor, and dignity."  Doc. #61 at 14.  This stigmatization, according to
24   Plaintiffs, impaired Mr. Murdock's future employment prospects and infringed his "freedom
25   to work and earn a living" in violation of the due process clause of the Fourteenth
26   Amendment.  Docs. #21, 61*; see Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d
27   1093, 1100 (9th Cir. 1981) (stating that a citizen's liberty interest is protected under the due
28   process clause if it "encompasses an individual's freedom to work and earn a living.").

1        To raise a constitutionally protected liberty interest, the reasons for Mr. Murdock's

2    non-renewal must be (1) "sufficiently serious to 'stigmatize' or otherwise burden the

3    individual so that he is not able to take advantage of other employment opportunities, and (2)

4    the charges must be published." *Id.* at 1101.  Assuming, but not deciding, that the charges

5    were sufficiently stigmatizing, *see Campanelli v. Bockrath*, 100 F.3d 1476, 1478 (9th Cir.

6    1996) ("the requisite stigma could result from a charge of 'dishonesty'") (citing *Roth,* 408

7    U.S. at 573), the Court finds that the charges were not published.

8        Plaintiffs claim that the placement of the non-renewal letter in his personnel file and

9    Defendants' act of reporting him to the Investigative Unit of the State Board of Education

10   ("SBOE") constitutes publication sufficient to trigger constitutional protection.  Doc. #61.

11   In support of this position, Plaintiffs rely on *Graves v. Duganne*, 581 F.2d 222 (9th Cir. 1978)

12   (finding that "liberty interests were involved . . .when the only public statement was the

13   teacher's non-renewal letter.").  Defendants contend that they did not make any "'public

14   statements' at all in the course of non-renewing Mr. Murdock's contract . . . ." Doc. #43 at

15   12-13.  In particular, Defendants cite to the minutes of the public hearing which simply state

16   that the result of the vote was 3-2, and to Mr. Murdock's own testimony in which he

17   concedes that Defendants never made any oral statements before, during, or after their public

18   meeting regarding the reasons for his non-renewal.  Doc. #44, Ex. A(3) at 159.

19       Plaintiffs' reliance on *Graves* is misplaced.  The court in *Graves* assumed for the

20   purposes of its analysis that a liberty interest was involved, but never decided that the

21   presence of a non-renewal letter in a personnel file satisfied the public statement requirement.

22   581 F.2d at 224.  Here, Defendants testified without contradiction that they have not received

23   any requests for the letter, have not disclosed the letter, and removed the letter from Mr.

24   Murdock's file.  *See Cox v. Roskelley*, 359 F.3d 1105 (9th Cir. 2004) (noting that "*absent

25   expungement*, placement of stigmatizing information in an employee's personnel file

26   constitutes publication when the governing state law classifies an employee's personnel file

27   as a public record." (emphasis added).)  Plaintiffs' assertion that a report to the SBOE

28   constitutes a "public statement" is also unfounded because "all information received and

1  records or reports kept by the state board of education . . . are confidential and are not a

2  public record." A.R.S. § 15-350(A).

3      As Plaintiffs cannot show that Defendants made a public statement, their liberty due

4  process claim must fail. *See Bishop v. Wood,* 426 U.S. 341, 348 (1975) ("Unpublicized

5  accusations do not infringe constitutional liberty interests because, by definition, they cannot

6  harm 'good name, reputation, honor, or integrity.'") The Court will grant summary judgment

7  with respect to Count Seven.

8      **C.    Substantive Due Process.**

9      Plaintiffs also appear to allege that Defendants deprived Mr. Murdock of his right to

10 continued employment when they declined to renew his contract for "unreasonable, arbitrary,

11 and capricious" reasons. Doc. #21 at 9. In *Portman v County of Santa Clara*, 995 F.2d 898,

12 908 (9th Cir. 1993), the Ninth Circuit noted that "[e]very circuit . . . requires that the

13 employee show that he has a property right in his or her job before he or she can claim a

14 violation of substantive due process." As Mr. Murdock had no property interest in his

15 continued employment, Plaintiffs' substantive due process claim fails.

16     **D.    Open Meeting Claim – Count Two.**

17     Plaintiffs assert that Defendants violated Arizona's Open Meeting Law in four distinct

18 ways. Docs. ##21, 61.

19         **1.    Twenty-Four Hour Notice.**

20     The Open Meeting Law provides that a public body may act in executive session to

21 discuss an employee's employment, discipline, or dismissal, but the public body must

22 provide the employee with written notice "not less than twenty-four hours" before the

23 meeting. A.R.S. § 38-431.03(A)(1). Plaintiffs claim that Defendants violated this provision

24 because they "cannot prove, as they are required to do, that the written notice of the

25 executive session was given twenty-four hours prior to the [October 23, 2003 executive

26 board] meeting." Doc. #61 at 8.

27     Defendants provide an affidavit from Ms. Allen which states that she "prepared a

28 letter to Mr. Murdock . . . that informed him he had a right to request that the discussion

1    concerning his employment be conducted in open session [and] handed that letter to [him]

2    on October 22, more than 24 hours before the meeting." Doc. #44, Ex. D, ¶9-10.  Mr.

3    Murdock admits in his deposition that he received Ms. Allen's letter explaining his right to

4    request an open meeting, but states "I don't recall when I received this letter or in what

5    manner I receive the letter." *Id.*, Ex. A(2) at 114-115.  Murdock also admits that on

6    October 22, 2003, he understood that "if [he] wanted to have the [October 23 executive

7    board] discussion concerning [his] employment in open session, he could . . . but there would

8    be possible consequences." Doc. #44, Ex. A(2), at 113.

9         A party opposing summary judgment "must set forth specific facts showing that there

10   is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Ind. Co. v. Zenith*

11   *Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In this case, Defendants have produced

12   affirmative evidence that Mr. Murdock received 24 hours' notice of the executive session.

13   Plaintiffs have produced no controverting evidence – Murdock merely states that he does not

14   recall.  Doc. #44, Ex. A(2), at 114-15.  Such an assertion does not raise a genuine issue of

15   fact for trial.

16                    **2.    Submitting Written Statement at and Attending the Executive**
                             **Session.**
17

18        Plaintiffs next claim that Defendants violated A.R.S. § 38-431.03(A)(1) by failing to

19   permit Mr. Murdock to submit a written statement for consideration at the executive session

20   and by pressuring him not to attend the meeting.  Doc. #21.  Defendants counter that this

21   provision of the Open Meeting Law does not "contain any language requiring that public

22   bodies such as the [Governing] Board permit individuals such as Mr. Murdock to submit

23   such written statements at executive sessions." Doc. #43 at 7.

24        A.R.S. § 38-431.03(A)(1) speaks to only two subjects:  the purposes for which a

25   public body may hold an executive session, and the notice requirement discussed above.

26   Plaintiffs offer no legal authority in support of their claim that the statute includes an implicit

27   requirement that the Governing Board entertain information from Mr. Murdock in

28   conducting executive sessions.

1    With respect to Mr. Murdock's attendance, an executive session, by definition, is "a
2  gathering of a quorum of members of a public body *from which the public is excluded* for one
3  or more of the reasons prescribed in section 38-431.03." A.R.S. § 38-431(2) (emphasis
4  added).  To be sure,"individuals whose presence is reasonably necessary in order for the
5  public body to carry out its executive session responsibilities may attend the executive
6  session." *Id*.  Plaintiffs do not allege that Mr. Murdock satisfied this standard or that the
7  provision mandated  his inclusion.

8    Plaintiffs have provided no basis to conclude that the Open Meeting Law required
9  either Mr. Murdock's presence or that the Governing Board accept his written statement.

10               **3.        Addressing the Governing Board and Witness Rights.**

11    Plaintiffs allege that Defendants denied Mr. Murdock an opportunity to address the
12  Governing Board on November 14, 2003, and "call witnesses, cross-examine witnesses and
13  present evidence," in violation of the Open Meeting Law.  Doc. #21 at 9-10.  Defendants
14  state that Mr. Murdock addressed the Governing Board and read a prepared statement at the
15  meeting.  Doc. #43.  Murdock admits that he read a prepared statement.  Doc. #44 Ex. A(1)
16  at 140, 143.

17    Defendants contend that the Open Meeting Law confers no rights to call witnesses,
18  cross-examine witnesses, or present evidence to the Governing Board.  Doc. #43.  The Court
19  agrees.  Plaintiff cites no authority in support of such rights.

20               **4.        Voting Prior to Public Meeting.**

21    Finally, Plaintiffs contend that the Governing Board voted not to renew Mr.
22  Murdock's contract in advance of the public meeting, in violation of A.R.S. § 38-431(D),
23  which forbids a public body from undertaking "legal action" anywhere except at a public
24  meeting.  Doc. #21.  Plaintiffs provide as evidence an affidavit of Duane Badger, a teacher
25  at Mingus Union High School and a member of the Mingus Union Education Association.
26  Mr. Badger states that on November, 12, 2003, a letter was read to him, dated November 14,
27  2003, "announcing that [Mr. Murdock's] contract would not be renewed."  Doc. #44, Ex. F
28  ¶¶ 16-17.  The Governing Board's public meeting was held on November 13, 2003.

1    Plaintiffs "do not dispute the fact that the [Governing] Board did not cast its actual

2    vote on Mr. Murdock's contract renewal until the November 13 public meeting." Doc. #56

3    ¶ 35.  Accordingly, Plaintiffs concede that the Governing Board took "legal action" at the

4    November 13 meeting, in accordance with A.R.S. § 38-431(D).

5         The Court will grant summary judgment to Defendants with respect to Count Two.

6    **E.    Breach of Contract Claim – Count Four.**

7         "In an action on a contract plaintiff has the burden of proof to show a contract, a

8    breach, and damages." *Deck v. Hammer*, 440 P.2d 1006, 1112 (1968).  Mr. Murdock's

9    employment contract was for one academic year, beginning on August 7, 2003 and ending

10   on May 21, 2004.  Doc. #44, Ex. B.  Plaintiffs argue that Defendants breached Mr.

11   Murdock's contract "by failing to provide adequate notice and opportunity to be heard on the

12   issues surrounding [Mr. Murdock's] non-renewal of his teaching contract . . . ."  Doc. #21

13   at 11.  Defendants contend that no breach occurred because "Mr. Murdock remained

14   employed by the District through the expiration of his contract in May 2004, and received

15   all of the compensation and benefits to which he was entitled under his contract."  Doc. # 43

16   at 9.

17        The Court agrees with Defendants that Mr. Murdock's employment contract was not

18   breached.  First, Plaintiff admits that he "remained employed by the school district through

19   May 21st, '04," and that the District provided employment benefits, such as health insurance,

20   "through the end of the contract term."  Doc. #44, Ex. A(1) at 10-11.  By Plaintiffs' own

21   admission, he remained employed through the expiration of his contract and received all of

22   the compensation and benefits to which he was entitled under this agreement.

23        Second, "notice and opportunity to be heard on the issues surrounding [Mr.

24   Murdock's] non-renewal of his teaching contract" (Doc. #21 at 11) is not a term of the

25   employment contract.  The alleged failure to provide such notice thus cannot breach the

26   contract.

27        To the extent that Plaintiffs argue that the contract contained an implied duty of good

28   faith and fair dealing, Plaintiffs did not state this claim in its amended complaint.  Doc. #21.

1    Accordingly, the Court will not consider the merits of this claim, which is distinct from the

2    breach of contract claim.  *See Wells Fargo Bank v. Arizona Laborers, Teamsters, & Cement*

3    *Masons Local No. 395 Pension Trust*, 38 P.3d 12, 29 ¶ 64 (Ariz. 2002) ("The duty of good

4    faith extends beyond the written words of the contract . . . . [A] party may . . . breach its duty

5    of good faith without actually breaching an express covenant in the contract.").

6              **F.    Tortious Interference Claim – Count Five.**

7              To establish a prima facie case of intentional interference with contractual relations

8    Plaintiffs must prove (1) the existence of a valid contract, (2) the interferer's knowledge of

9    the relationship of the contract, (3) the intentional interference inducing or causing a breach

10   of contract, and (4) a resultant damage to the party whose relationship or expectancy has

11   been disrupted *See Wallace v. Casa Grande Union High School*, 909 P.2d 486, 494 (Ariz.

12   App. 1995).  In addition, the interference must be "improper as to motive or means" before

13   liability will attach.  *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025, 1043 (1985).

14             Plaintiffs allege, without citing any case law, that Defendants tortiously interfered

15   with Mr. Murdock's future employment by their illegal "failure to fully investigate the

16   [misconduct] allegations, reckless disregard for the truth, and intentional presentation of

17   selective, one-sided information to the Board." Doc. #61.  As explained above, however, Mr.

18   Murdock's contract was not breached.  Moreover, because Mr. Murdock was not a tenured

19   teacher, he had no right to continued employment and the adequacy or even the existence of

20   reasons for failing to rehire him presents no issue at law.  *See Wallace*, 909 P.2d at 494 (the

21   non-renewal of a teaching contract did not constitute a tortious interference with contract

22   claim.).

23             **G.    Punitive Damages – Count Six.**

24             Punitive damages constitute a remedy for actionable wrongful conduct.  As set forth

25   above, all of Plaintiffs causes of action fail.  His claim for the remedy of punitive damages

26   therefore also fails.

27             **IT IS ORDERED:**

28             1.    Defendants' motion for summary judgment, Doc. #43, is **granted**.

- 12 -

1       2.      Defendants' motion to strike, Doc. #63, is **denied as moot**.

2       3.      Plaintiffs' motion to remand, Doc. #50 , and for partial summary judgment,

3   Doc. #45, are **denied**.

4       4.      The Clerk shall terminate this action.

5   DATED this 12th day of May, 2006.

_____
David G. Campbell
United States District Judge

- 13 -